KENDALL BRILL & KELLY LLP
Philip M. Kelly (212714)
  pkelly@kbkfirm.com
Richard M. Simon (240530)
  rsimon@kbkfirm.com
Susannah M. Rooney (293493)
  srooney@kbkfirm.com
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California  90067
Telephone:   310.556.2700
Facsimile:   310.556.2705

Attorneys for Defendants Viacom
International, Inc. a/k/a/ VH1 Networks
a/k/a/ MTV Networks; MTV Networks
Enterprises, Inc.; New Pop Culture
Productions, Inc.; Monami Entertainment,
LLC; Mona Scott-Young; NFGTV, Inc.;
Jim Ackerman; Jeff Olde; Toby Barraud;
Stefan Springman; Christian McLaughlin

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 8th WONDER ENTERTAINMENT, LLC; TRISHA LUM; and NICKIE LUM-DAVIS,<br><br>            Plaintiffs,<br><br>       v.<br><br>VIACOM INTERNATIONAL, INC. a/k/a/ VH1 NETWORKS a/k/a/ MTV NETWORKS; MTV NETWORKS ENTERPRISES, INC.; NEW POP CULTURE PRODUCTIONS, INC.; MONAMI ENTERTAINMENT, LLC; MONA SCOTT-YOUNG; NFGTV, INC.; JIM ACKERMAN; KENNY HULL; JEFF OLDE; TOBY BARRAUD; STEFAN SPRINGMAN; CHRISTIAN MCLAUGHLIN; INTERLOC FILMS; and DOES 1-50,<br><br>            Defendants. | Case No. 2:14-cv-01748-DDP-JCG<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:  Hon. Dean Pregerson<br><br>Date:    August 15, 2016<br>Time:   10:00 am<br>Crtrm.: 3 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on August 15, 2016 at 10:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Dean Pregerson, United States District Judge, Central District of California, located in the United States Courthouse, 312 North Spring Street, Courtroom 3, Los Angeles, California 90012, Defendants Viacom International Inc., MTV Networks Enterprises, Inc., New Pop Culture Productions, Inc., Monami Entertainment, LLC, Mona Scott-Young, NFGTV, Inc., Jim Ackerman, Jeff Olde, Toby Barraud, Stefan Springman, and Christian McLaughlin (collectively, "Defendants") will and hereby do move this Court pursuant to Rule 56 of the Federal Rules of Civil Procedure to grant summary judgment in their favor on Plaintiffs' sole claim of copyright infringement.

This Motion is made upon the grounds that there is no genuine issue of material fact as to the lack of substantial similarity of protectable expression between Defendants' *Love & Hip Hop* television series and the Plaintiffs' *Hip Hop Wives* one-page reality television show treatment because, among other things, the works are dissimilar in expression, and any claimed similarities either do not exist or result from unprotectable ideas, real-life biographical facts, unoriginal genre tropes, and scènes-à-faire.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities in support thereof, the Statement of Uncontroverted Facts and Conclusion of Law and the Declaration of Susannah M. Rooney filed concurrently herewith, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

/ /

/ /

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on May 2, 2016.  *See* Declaration of Susannah M. Rooney ¶ 2.

DATED:  June 24, 2016                    Respectfully submitted,

KENDALL BRILL & KELLY LLP


By:  ___/s/ Philip M. Kelly_____
Philip M. Kelly
Attorneys for Defendants Viacom
International, Inc. a/k/a/ VH1 Networks
a/k/a/ MTV Networks; MTV Networks
Enterprises, Inc.; New Pop Culture
Productions, Inc.; Monami Entertainment,
LLC; Mona Scott-Young; NFGTV, Inc.;
Jim Ackerman; Jeff Olde; Toby Barraud;
Stefan Springman; Christian McLaughlin

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND TO THE WORKS IN SUIT .................................................. 4

    A.      Plaintiffs' Hip Hop Wives Treatment ...................................................... 4

    B.      Defendants' Love & Hip Hop Television Series ...................................... 7

    C.      Prior Art: "Real Housewives" and "Behind The Music" Genres ........... 9

III.    ARGUMENT ..................................................................................................... 11

    A.      Legal Standard for Motion for Summary Judgment ............................. 11

    B.      Defendants are Entitled To Summary Judgment Because
        Plaintiffs' One-Page Treatment Is Not Protectable and Not
        Substantially Similar to Defendants' Love and Hip Hop Series .......... 11

        1.      Plaintiffs' Treatment For A Reality Television Program Is
               Entitled To Limited, If Any, Copyright Protection. .................... 13

        2.      Plaintiffs' Treatment Lacks Any Similar Protectable
               Elements to Defendants' Television Series ................................. 17

               a)      Plot and Sequence of Events ........................................... 18

               b)      Dialogue .......................................................................... 20

               c)      Setting.............................................................................. 20

               d)      Pace.................................................................................. 20

               e)      Theme ............................................................................... 21

               f)      Mood................................................................................. 22

               g)      Characters ........................................................................ 22

IV.     CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Computer, Inc. v. Microsoft Corp.*,
      35 F.3d 1435 (1994) ............................................................................ 12

*Benay v. Warner Bros. Ent't, Inc.*,
      607 F.3d 625 (9th Cir. 2010) ......................................................... 13, 17

*Berkic v. Crichton*,
      761 F.2d 1289 (9th Cir. 1985) ........................................... 1, 12, 18, 19

*Bethea v. Burnett*,
      2005 WL 1720631 (C.D. Cal. June 28, 2005)............................ 2, 15, 16

*Cavalier v. Random House, Inc.*,
      297 F.3d 815 (9th Cir. 2002) ................................................... *passim*

*Celotex Corp. v. Catrett*,
      477 U.S. 317 (1986) ........................................................................ 11

*Chase-Riboud v. DreamWorks, Inc.*,
      987 F.Supp.1222 (C.D. Cal. 1997)................................................... 23

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*,
      109 F.3d 1394 (9th Cir. 1997) ........................................................ 12

*DuckHole Inc. v. NBC Universal Media LLC*,
      2013 WL 5797279 (C.D. Cal. Sept. 6, 2013)................................... 17

*Feist Pubs., Inc. v. Rural Tel. Serv. Co.*,
      499 U.S. 340 (1991) ................................................................... 13, 16

*Funky Films, Inc. v. Time Warner Ent't Co.*,
      462 F.3d 1072 (9th Cir. 2006) ............................................. 12, 13, 18

*Idema v. Dreamworks*,
      162 F.Supp.2d 1129 (C.D. Cal. 2001)............................................. 13

*Kouf v. Walt Disney Pictures & Television*,
      16 F.3d 1042 (9th Cir. 1994) ..................................................... 12, 13

ii

*Litchfield v. Spielberg*,
   736 F.2d 1352 (9th Cir. 1984) ............................................................................ 12

*Milano v. NBC Universal, Inc.*,
   584 F.Supp.2d 1288 (C.D. Cal. 2008) ................................................... 2, 15, 16

*Olson v. National Broadcasting Co, Inc.*,
   855 F.2d 1446 (9th Cir. 1988) ............................................................................ 22

*Rice v. Fox Broad. Co.*,
   330 F.3d 1170 (9th Cir. 2003) ...................................................... 12, 15, 16, 22

*Rose v. Connelly*,
   38 F.Supp. 54 (S.D.N.Y. 1941) ......................................................................... 24

*Shame on You Productions, Inc. v. Banks*,
   2015 WL 4885221 (2015) ............................................................................ 23, 25

*Shaw v. Lindheim*,
   919 F.2d 1353 (9th Cir. 1990) ............................................................................. 1

*Wild v. NBC Universal, Inc.*,
   788 F.Supp.2d 1083 (C.D. Cal. 2011) ............................................................... 25

*Williams v. Crichton*,
   84 F.3d 581 (2d Cir. 1996) ................................................................................. 24

*Zella v. E. W. Scripps Co.*,
   529 F.Supp.2d 1124 (C.D. Cal. 2007) ...................................................... *passim*

**Statutes**

Copyright Act, 17 U.S.C. § 505 ................................................................................ 25

**Rules**

Central District Local Rule 7-3 ................................................................................... 2

Federal Rules of Civil Procedure Rule 56 ................................................................. 1

Federal Rules of Civil Procedure Rule 56(a) .......................................................... 11

**Treatises**

2 Patry on Copyright § 4:12 (West 2015) ................................................................ 14

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGEMENT

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

No one can own the basic idea for a story. General plot ideas are not protected by copyright law.
— *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985)

[F]acts and ideas within a work are not protected.
— *Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990)

## I.   <u>INTRODUCTION</u>

In this action, Plaintiffs seek copyright protection, contrary to settled Ninth Circuit law, for a generic ***idea*** for a reality-television show about the wives of hip-hop music icons.  The entirety of Plaintiffs' work in suit is a one-page television "treatment" entitled *Hip Hop Wives* (the "Treatment").  The Treatment comprises factual, publicly-known, biographical information about four real women and a general concept: "See each of these women in their daily lives, individually and as real-life friends, as they share in the spoils and struggle with the challenges being a hip hop wife entails."  Based on that high-level concept, Plaintiffs allege a single cause of action for copyright infringement against the creators and producers of *Love & Hip Hop*, a reality-television program on cable channel VH1 focused on the personal and professional lives of women who live and work in the hip-hop music industry.

Plaintiffs' copyright claim fails right out of the gate: the only arguable similarity is an unprotected concept in the crowded genre of "real wives of…" reality television.  Indeed, there is no protectable ***expression*** in the Treatment, let alone any expression that is substantially similar to Defendants' six broadcast seasons – 82 episodes – of *Love & Hip Hop*.[1]

Under the Ninth Circuit's "extrinsic test" for substantial similarity, courts must conduct an "analytic dissection" of the works at issue and consider "only whether the

---

[1] To preserve resources, the Parties have jointly agreed to phase discovery and summary judgment to focus only on whether the Treatment contains protectable expression that is substantially similar to *Love & Hip Hop*.  The parties will address access and defenses such as independent creation at a later time, if necessary.

1   *protectible elements*, *standing alone*, are substantially similar." *Cavalier v. Random*

2   *House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) (original emphasis).  Thus courts must

3   filter out unprotectable elements, including *ideas, facts*, *unoriginal elements*, *stock*

4   *elements,* and *scènes-à-faire*.  *Id.*  Several cases in this Circuit have demonstrated

5   that substantial similarity is exceedingly difficult to establish in the reality television

6   context, because reality show formats are precisely the kind of ideas, facts, genre

7   tropes and scènes-à-faire that are not protectable and must be filtered out of the

8   similarity analysis.[2]

9         Viewed under the applicable standards, it is clear that this case must be

10  dismissed on summary judgment:  Plaintiffs' Treatment for *Hip Hop Wives* lacks any

11  original, expressive content that is substantially similar to *Love & Hip Hop*.

12        *First*, the Treatment is largely devoid of *expressive* content.  As Plaintiffs have

13  conceded, the Treatment is nothing more than a high-level overview of an *idea*, a

14  pitch document and a starting basis, lacking detail and needing substantial

15  development.  What little is actually fixed on paper in the Treatment is comprised of

16  unprotectable factual information about the proposed cast members and highly

17  generic concepts such as "the ups and downs of fame," struggles with marital

18  infidelity and unspecified legal woes, and the challenges of providing a "normal life"

19  for children in unusual circumstances.  How such universal concepts ultimately

20  would have developed is precisely what is *absent* from the Treatment.

21        *Second*, the Treatment is devoid of *original* content.  Plaintiffs concede, as

22  they must, that there have been ***dozens*** of "real wives" reality television shows

23  (including the immensely popular "Real Housewives" series and VH1's own

24  *Basketball Wives* and *Mob Wives*) that have spawned a cottage industry of genre

25  tropes pertaining to a small group of women in relationships with rich or famous

26

---

     [2] *See, e.g.*, *Milano v. NBC Universal, Inc.*, 584 F.Supp.2d 1288 (C.D. Cal.

27  2008); *Bethea v. Burnett*, 2005 WL 1720631, at *11-12 (C.D. Cal. June 28, 2005);

28  *Zella v. E. W. Scripps Co.*, 529 F. Supp. 2d 1124 (C.D. Cal. 2007).

men, their struggles in aspiring to or maintaining wealth and privilege, marital and family issues, legal problems, and melodramatic relations among the principal women.  Moreover, several "behind the scenes" reality shows predate the Treatment and follow wives in the hip hop industry and the tropes of the ups and downs of celebrity couples, balancing career and family, marital infidelity and incarceration.  At least two of the cast members in the Treatment have previously been featured in reality shows addressing the same real-life issues identified in the Treatment.  A third woman was already working on a similar reality show with VH1.

*Third*, an element-by-element comparison of the works magnifies the lack of protectable content and absence of substantial similarity.  The Treatment has no dialogue, no plot, no sequence of events, no pacing and no setting.  In contrast, *Love & Hip Hop* contains actual, concrete storylines based on specific events in the cast members' lives, detailed plots and sequences of events with a beginning, middle, and end, extensive dialogue and transitional interviews, and a roster of settings from well-known New York restaurants to strip clubs.  Although Plaintiffs try to "read in" absent elements, their efforts only emphasize their dependence on unprotectable stock elements and scènes-à-faire.  Plaintiffs' alleged theme of the "burdens of privilege" and mood of "extreme no holds barred drama," are standard fare for such reality programs.  Finally, the "characters" (in fact, real people appearing as themselves) are wholly dissimilar: only two women out of dozens of cast members on Defendants' show are common to the Treatment, and only one woman – the woman already in negotiations to star in a VH1 reality series – has a major role.

In an extrinsic analysis, these shows have far less in common than several cases dismissed on the pleadings.  Ultimately, Plaintiffs are attempting to shoehorn an allegation that Defendants copied their idea for yet another "real wives" reality show into an inapposite copyright infringement claim.  But after the filtering of unprotectable elements, nothing in the Treatment is protectable or substantially similar to *Love and Hip Hop*.  Defendants are entitled to summary judgment.

## II.   BACKGROUND TO THE WORKS IN SUIT

### A.   Plaintiffs' Hip Hop Wives Treatment

Plaintiffs' Treatment is the only document related to *Hip Hop Wives* ("*HHW*") that was submitted to the Copyright Office and in which Plaintiffs claim a copyright. Statement of Uncontroverted Facts ("SUF") 2; Declaration of Susannah M. Rooney ("Rooney Decl.") Ex. C, RFA 14.  The ***entirety*** of the Treatment is pasted below:



*Hip Hop Wives*
Created by Trisha Attles, Tashera Simmons and Nickie Shapira

*"Heavy must be the hand that wears the ring of a hip hop star."*

Follow the cameras as they delve deep into the lives of four women married to some of the biggest names in hip hop.  Who are these women?  This show will reveal the ups and the downs that come with being the wife of a hip hop icon.

Meet Tashera, wife of the controversial multi-platinum megastar, DMX.  Having first met when she was only 10 years old, their relationship and marriage has lasted over 20 years and seen the birth of 4 children.  Witness as she struggles with her husband through his legal woes and public infidelities.  Her deep rooted spirituality and commitment to family has kept her by his side, but his latest bout in jail is testing her resolve like never before.

Meet Debbie, wife of Irv Gotti—the man who discovered such hit artists as Ja Rule, Jay Z and DMX.  The two have lived separately for the past 5 years, but through it all, Deb has managed to be a model mother and despite her husband's fame and womanizing, has managed to provide a "normal life" for their kids, and even found the time to return to school to pursue a higher degree.

Meet Mashonda, wife of super producer Swizz Beats (T.I., Jay Z, Eve, DMX).  It was thought to be a match made in heaven—the merger of a superstar producer with his new singing sensation, Mashonda--but after 4 years of marriage, the honeymoon is over.  Witness as she struggles with the divorce amidst the public humiliation of Swizz's new love interest, and as she rediscovers life as a single, independent woman, determined to make her mark as a singer, entrepreneur and philanthropist.

Meet Chrissy, soon-to-be wife of hip hop bad boy, Jim Jones.  As a celebrity stylist, model and a favorite for hip hop videos, Chrissy was publicly pursued by a number of A-list men in the music industry, but she chose Jim—the "love of her life."

See each of these women in their daily lives, individually and as real-life friends, as they share in the spoils and struggle with the challenges being a hip hop wife entails.  Get the real story of the ups and downs of fame and the personal struggles each of these women share as wives, mothers, and friends.  Learn the truth behind the legal troubles, rumors and scandals that have surrounded some of the most talented men in hip hop and for the first time, see how it has affected the women who stand beside them.

Watch as the drama unfolds in the no-holds barred, in-depth, insider look at the women these hip hop icons chose to "wife."  All eyes are on them as these four women reveal to the world how, *"heavy must be the hand that wears the ring of a Hip Hop star."*

After outlining the starting point for a reality show about four women married or engaged to hip hop icons, and their real-life interactions with their families and as friends, the Treatment introduces four proposed cast members and describes actual facts about their lives:

- **Tashera Simmons** is the wife of platinum-selling rapper DMX.  Rooney Decl. Ex. B ¶ 2.  Simmons previously appeared in both the *Rapper Wives* and *Hip Hop Wives* entries of the *E! True Hollywood Story* anthology.  SUF 11.  The Treatment refers to Simmons' well-publicized struggles with DMX's infidelity, legal woes, and incarceration.  Rooney Decl. Ex. B ¶ 2.

- **Debbie Lorenzo** is the wife of hip hop and R&B producer Irv Gotti.  Rooney Decl. Ex. B ¶ 3.  Lorenzo and Gotti starred in *Gotti's Way*, a reality TV series focused on the Gotti family that aired on VH1 from 2007-2009.  SUF 14.  Plaintiffs were aware of *Gotti's Way* when developing the Treatment.  SUF 16.  The Treatment refers to Lorenzo's parenting through her husband's infidelity and her return to school, aspects of her life explored in *Gotti's Way*.  Rooney Decl. Ex. B ¶ 3.

- **Mashonda Tifrere** is the ex-wife of producer of Swizz Beatz and is a recording artist who was once signed to Beatz's label.  Rooney Decl. Ex. B ¶ 4.  Tifrere and Beatz endured an acrimonious and well-documented public divorce in 2008 when Beatz began a relationship with R&B star Alicia Keys.  SUF 20.  The Treatment refers to Tifrere's divorce and her future as an artist, entrepreneur, and philanthropist.  Rooney Decl. Ex. B ¶ 4.

- **Chrissy Lampkin** is the long-time girlfriend and later fiancée of hip hop artist Jim Jones.  Rooney Decl. Ex. B ¶ 5.  At the time that Plaintiffs were developing the Treatment, Ms. Lampkin was already in discussions with VH1 about a reality show that would feature her, a fact of which Plaintiffs were aware in pitching their concept.  SUF 22.

Nothing in the Treatment identifies any creative, expressive, or original aspect of the women's lives.[3]  The Treatment does not describe what specific struggles the women will face, how the struggles will impact their lives, how they will cope, how they will interact with each other, or how these non-existent details will play out over the course of an episode or season.

Instead, the Treatment describes the proposed series in the most general and archetypal terms: "See each of these women… as they share in the spoils and struggle with the challenges….  Get the real story of the ups and downs of fame and the personal struggles…as wives, mothers friends….  Learn the truth behind the legal troubles, rumors, and scandals that have surrounded some of the most talented men in hip hop and for the first time, see how it has affected the women who stand beside them…  Watch as the drama unfolds in the no-holds barred, in-depth, insider look.…"  Rooney Decl. Ex. B ¶¶ 6-7.  That is all.

Plaintiffs admit that the Treatment is only a "high level" concept.  Trisha Lum concedes that the Treatment was still at a "generic level" without storylines; that it was pitched to the principal cast members as a "concept" in efforts to recruit them; that the treatment has a "high-level description" of the characters and that Plaintiffs "never came up with detailed storyline arcs."  SUF 3-5.  She recognized that development of a television program based on the Treatment would have required extensive development about locations, specific details, character interactions, and plot lines.  SUF 3, 5.  Michael McQuarn, owner of plaintiff 8th Wonder, also admits

---

[3] In deposition, Michael McQuarn suggested just two purportedly fictional elements in the Treatment: first, he claims that the Treatment inaccurately depicted the women "stand [ing] by their man," and second, he claims that Lampkin is not a stylist in real life.  Rooney Decl. Ex. G, Deposition Transcript of Michael McQuarn ("McQuarn Depo.") 87:25-88:14, 101:11-103:1, 110:20-25.  Even assuming McQuarn is correct, neither of these elements is found in *Love & Hip Hop*, as the women there certainly do not all stand by their men (if they have men), and Lampkin is not depicted as a stylist.  SUF 23.

that the Treatment is "the starting point" for development and the "basis and understanding of what the show was" to become.  SUF 7.

### B.   Defendants' *Love & Hip Hop* Television Series

*Love & Hip Hop* ("*L&HH*") is a reality television series broadcast on the VH1 cable channel that depicts the lives and relationships of women involved with the hip hop and R&B industry.  There have been six seasons of the series to date, consisting of a total of 82 episodes.  SUF 33.  The program has featured nearly two dozen women as principal cast members over its run, with each season generally focusing on four to six women.  SUF 34-35.  The first season of *L&HH* featured these women:

- **Emily Bustamante**, a stylist to several rap artists and girlfriend of rapper Fabolous for 7 years.
- **Chrissy Lampkin**, the long-time girlfriend of Jim Jones.  Lampkin, as noted above, was already in talks with VH1 to appear in a reality television series at the time of Plaintiffs' pitch.  SUF 22.
- **Olivia Longott**, formerly part of the group G-unit, a single woman trying to make a name as a solo artist while seeking romance.
- **Somaya Reece**, also a single woman, a recent transplant to New York seeking to advance her music career.

In the second season, two more women joined the main cast:

- **Yandy Smith Harris**, a producer and sometime manager of Jim Jones.  Smith would go on to star in the next five seasons of *LHH*.
- **Kimberly ("Kimbella") Vanderhee,** the fiancée of Juelz Santana, former group-mate with Jim Jones.

SUF 26-32.

Mashonda Tifrere also appears for several minutes total in the first season, but is not a principle cast member.  SUF 19.  Later seasons of the show would see the departure of the first season cast members and the introduction of a dozen additional

main cast members, each with unique stories and circumstances to be explored.  SUF 34-35.

L&HH comprises dozens of hours of programming, depicting the various cast members' lives over many years, and it would require hundreds of pages to describe the expressive content of the series.  A single characteristic episode from the first season, *The Proposal*, is described in the Report of Arnold Margolin, Defendants' expert, and is attached as Exhibit I to the Rooney Declaration ("Margolin Report"), at paragraph 97.  Generally, a typical episode of *L&HH* tracks several interspersed serial storylines, each centered on developments and challenges facing a principal cast member or her dramatic relationships with the other cast members, a formula that is firmly established and closely followed in the "real wives" genre.  SUF 36. The primary stories across the first season of *L&HH* include the following:

(A) **Somaya** moves to New York City seeking to establish a hip hop music career. She flirts with producer Jim Jones, which makes Jones' girlfriend Chrissy jealous.  Jones, to prove his loyalty to Chrissy, declines to work with Somaya. Somaya is upset at Chrissy, and Somaya's manager Maurice soon becomes involved on her behalf.  Jones later confronts and pressures Maurice.  Maurice informs Somaya that he may not be able to manage her.

(B) **Chrissy** wishes to settle down with Jim Jones after several years of dating. She struggles with his failure to commit and his devotion to his mother. Eventually, Chrissy decides to propose to him at a nightclub.  She originally plans to do a burlesque dance but ends up making an impassioned speech. Although Jones' mother is upset, Jones agrees to marry.  Eventually Jones shows greater commitment and buys Chrissy an engagement ring.

(c) **Olivia**, former member of a girl group, seeks to develop her solo career. Insecure and eager for validation, she claims to be dating NY Jets player Darrelle Revis.  Emily, Revis' personal stylist and friend, finds out that Olivia has been lying about the relationship, and the two women come into tension.

1    Somaya also creates friction with Olivia by insulting Olivia's musical talents

2    on several blogs.

3    (D) **Emily** is trying to decide whether to leave her longtime partner, Fabolous.

4    Her friends, including Mashonda Tifrere, think she should leave him because

5    he cheats on her and will not take her out in public.  The drama heightens

6    when Emily sets up a family photo shoot and Fabolous does not appear.

7    Ultimately Emily ends up moving into her own apartment to start anew.

8    SUF 37.  DVD copies of Seasons 1 and 2 are filed with this Motion.[4]  Rooney Decl.

9    Ex. A.

## C.    Prior Art: "Real Housewives" and "Behind The Music" Genres

The premise of Plaintiffs' Treatment—a reality television series following the personal lives of several women who live the ups and downs of a world of wealth and celebrity—is very well established in the prior art.  In particular, the runaway success of the cable reality television series *Real Housewives of Orange County* in 2006 ushered in a cavalcade of "real wives" series.  Within just the *Real Housewives* franchise, shows like the *Real Housewives of New York* (2008), *Real Housewives of Atlanta* (2008) and *Real Housewives of New Jersey* (2009) all pre-date the Treatment, with at least five more *Real Housewives* series since 2009.  SUF 57. These shows depict several common structural and narrative tropes, including a small cast of women in relationships with rich, successful, or famous men; interspersed storylines of high drama focused on marital relations, motherhood, legal and financial troubles, and career and philanthropic efforts; and the women's sometimes friendly and often antagonistic relationships with each other.  SUF 55-56.

_____

[4] Although Plaintiffs allege that all of *L&HH* generally infringes *HHW*, they have made no allegations specific to any content in Seasons 3 and later of *L&HH*. Their expert's testimony and discovery responses have been confined to Season 1 with occasional reference to Season 2.  Seasons 1 and 2 are thus the focus of this Motion and are sufficient for the Court to determine a lack of substantial similarity.

Defendant VH1's own *Basketball Wives*—featuring the lives and struggles of the wives and girlfriends of NBA players—first aired in 2009 and was in production when Plaintiffs pitched the Treatment.  SUF 59-60.

Shows that focus on the family life of music performers and producers have also long been a staple of reality television, prompted by the worldwide success of *The Osbournes* in 2002 on MTV.  Hip-hop and R&B families have been a particularly fertile subject for such shows, especially on VH1 and its sister-station MTV.  Earlier hip-hop and R&B family shows include without limitation, *Run's House* (2005, MTV, family of Joseph Simmons of Run-D.M.C.); *Adventures in HollyHood* (2007, MTV, featuring the families of Juicy J and DJ Paul); *The Salt-N-Pepa Show* (2007, VH1, featuring the hip-hop girl group and their families); *Snoop Dogg's Father Hood* (2007, E!, featuring Snoop and long-suffering wife Shante); *Gotti's Way* (2007, VH1, featuring Irv Gotti and Debbie Lorenzo); and *Coolio's Rules* (2008, Oxygen Network, featuring Coolio's family).  SUF 61; Margolin Report ¶¶ 23-24.

Over the course of these programs and similar reality shows, nearly every conceivable narrative trope and theme has been explored again and again, including *all* of the story concepts identified in the Treatment: a wife's response to infidelity, courtship and the attendant frustrations, separation and divorce, a mother's effort to preserve normalcy for children of fame or privilege, and a woman striking out on new business endeavors.  SUF 55; Margolin Report ¶¶ 19-26.

These generic story concepts have even been expressed with respect to wives of hip hop artists, including in reality dramas like *Gotti's Way* (featuring Debbie Lorenzo's relationship with her husband), and also in anthology documentary programs such as *E! True Hollywood Story*: *Hip Hop Wives* (2006) and *E! True Hollywood Story: Rapper Wives* (2008) ("*Rapper Wives*") (both featuring Tashera Simmons).  SUF 11, 14-15, 62-64.

*Rapper Wives* is summarized on the Internet Movie Data Base as follows:

Rapper Wives peels back the curtain on the captivating lives of rappers' wives. The episode zeros in on the struggles and hardships these women must deal with in their everyday lives; anything from incarceration to infidelity, financial troubles, and even death. The show also focuses on family life, and what it takes to get through each day.

SUF 64; Margolin Report ¶ 26. That the description of *Rapper Wives* is nearly indistinguishable from the Treatment is unsurprising; the tribulations of women in relationships with famous and privileged men who must hold the line in difficult personal circumstances has universal appeal stretching back millennia, and the potential to share their lives through the lens of hip hop was recognized years ago.

## III.   ARGUMENT

### A.   Legal Standard for Motion for Summary Judgment

Summary judgment must be granted when "there is no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once the movant has met its initial burden, the responding party must identify specific facts that show a genuine issue of material fact for trial, *i.e.*, that the facts could allow a reasonable jury to return a verdict for the responding party. *Id*.

### B.   Defendants are Entitled To Summary Judgment Because Plaintiffs' One-Page Treatment Is Not Protectable and Not Substantially Similar to Defendants' *Love and Hip Hop* Series

To prevail on a copyright infringement claim, a plaintiff must prove that "the infringer had access to plaintiff's copyrighted work and that the works at issue are substantially similar in their protected elements." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). For the purposes of this motion, Defendants do not dispute Plaintiffs' allegations of access, and seek summary judgment in their

11

favor on the dispositive basis of a clear lack of substantial similarity in protectable elements between the works at issue.

"To determine whether two works are substantially similar, a two-part analysis—an extrinsic test and an intrinsic test—is applied." *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003). On a motion for summary judgment, only the extrinsic test is considered, because a plaintiff must satisfy both tests to prevail. *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994). With respect to narrative works, the extrinsic test is an objective test based on specific elements: "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events" in two works. *Id.*

Under the extrinsic test, the trial court must first perform an "analytic dissection," which filters and isolates each of the constituent elements of the copyrighted works. *Rice*, 330 F.3d at 1174; *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1398 (9th Cir. 1997) ("'Analytic dissection' focuses on isolated elements of each work to the exclusion of the other elements, combination of elements, and expressions therein."). In particular, the Court must "filter out" elements such as ideas, unoriginal and unprotectable elements, and scènes-à-faire. *Funky Films, Inc. v. Time Warner Ent't Co.*, 462 F.3d 1072, 1077 (9th Cir. 2006); *Cavalier*, 297 F.3d at 826. Plaintiffs "may place no reliance upon any similarity in expression resulting from unprotectable elements." *Apple Computer, Inc.*, 35 F.3d 1435, 1446 (1994) (citation omitted).

The extrinsic test can be satisfied only by similarities in "the actual concrete elements that make up the total sequence of events and relationships between the major characters" because "[n]o one can own the basic idea for a story." *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985). Thus, the extrinsic test is not satisfied by lists of unprotected general plot ideas, character types, stock elements and scènes-à-faire that are summarized at a high level of abstraction. *Litchfield v.*

1  *Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984) (such lists "are inherently subjective
2  and unreliable"); *accord Kouf*, 16 F.3d at 1045-46 (9th Cir. 1994).

3      The Ninth Circuit has "frequently ... affirmed summary judgment in favor of
4  copyright defendants on the issue of substantial similarity." *Funky Films*, 462 F.3d at
5  1076-77.  In particular, numerous cases grant summary judgment as to motion
6  pictures and television shows, where, as here, the works share only unprotected ideas
7  and stock elements.  *See, e.g., id.* at 1081; *Benay v. Warner Bros. Ent't, Inc.*, 607 F.
8  3d 625 (9th Cir. 2010) (stock scenes and themes are not protected).

9          **1.    Plaintiffs' Treatment For A Reality Television Program Is
               Entitled To Limited, If Any, Copyright Protection.**
10

11      A work that is composed largely of non-protectable elements, such as facts or
12  scènes-à-faire, receives "thin" rather than "broad" protection.  *See Feist Pubs., Inc. v.
13  Rural Tel. Serv. Co.*, 499 U.S. 340, 357-58 (1991) ("No matter how original the
14  format ... facts themselves do not become original through association.")  "The
15  fewer original (or non-necessary) elements there are in a copyrighted work, the
16  closer to identical an allegedly infringing work must be before it will be considered
17  substantially similar."  *Idema v. Dreamworks,* 162 F.Supp.2d 1129, 1178 (C.D. Cal.
18  2001).  Based on an admitted lack of detail, SUF 3-8, plus lack of originality in what
19  is included, the Treatment is entitled to "thin," if any, protection.

20      ***First***, by its nature, a television series "treatment" stands at the conceptual end
21  of the idea-expression spectrum.  The work here is not a script, story arc, character
22  arc, or even an outline of potential episodes:  it is a one-page statement presenting a
23  show idea and format and identifying the women whose real lives Plaintiffs proposed
24  to follow and film.  It is not an expressive work but rather a sales "pitch" to attract
25  interest in the concept and greenlight further development of an actual show with
26  expressive content.  SUF 7; McQuarn Depo. 140:4-141:4: ("[W]e went into VH1, we
27  gave them the treatment, and we went on to the pitch…The treatment was the—was
28  the basis and understanding of what the show was.").  Plaintiffs admit the Treatment

presents the potential show only at a "generic level" with a "high-level description" of the principal cast, and Plaintiffs "never came up with detailed storyline arcs." SUF 3-5.  Later development would have included missing expressive elements such as locations, specific details, character interactions, and plot lines.  SUF 3.  The Treatment was  "the starting point for paper development," the "basis and understanding of what the show was."  SUF 7.

*Second*, as a concept for a reality television show, the Treatment is inherently scarce on protectable expressive content.  As summarized by *Patry*:

> Format may also be used to refer to a broad unprotectible idea, like a television or radio show "format."  These types of claims have increased recently as the lamentable dominance of "reality" television has resulted in a rapid descent to bottoms not imagined even by Newton Minnow, including, fantastically, claims that the format (or concept) of one reality television has been copied by another. These claims vastly overstate the degree of originality in such works, and fundamentally misconstrue copyright law.

2 Patry on Copyright § 4:12 (West 2015).

As such, it is exceedingly difficult to establish substantial similarity in the context of reality television, as several cases in the Central District have shown:

***Zella v. E.W. Scripps Co.***.  In *Zella*, the Honorable Audrey Collins granted defendants' motion to dismiss where plaintiffs claimed that their treatment for *Showbiz Chefs*, which described a half-hour interview/cooking show featuring celebrities cooking their favorite dishes in their own kitchens and a host who would prepare the meal with the guests, was infringed by Rachel Ray's eponymous talk and lifestyle cooking show.  As a preliminary matter, the court observed that "[i]n the context of fictional plot lines, ***courts have declined protection of ideas far more developed than Plaintiffs' one-page treatment and three-page script*** for *Showbiz Chefs*." 529 F.Supp.2d at 1134 (emphasis added).  Then, upon comparing the two works, the court rejected plaintiffs' claim to copyright protection in a combination of elements allegedly found in both works because these were unoriginal generic elements and scènes-à-faire: a cooking show with a host; guest celebrities; an

interview and a cooking segment; discussion of the celebrity's current projects; and a tour of the celebrity's home and kitchen. *Id.* at 1134-15.

***Milano v. NBC Universal, Inc.***  In *Milano*, the Honorable Gary Feess granted defendant summary judgment where the plaintiff claimed that her treatment *From Fat to Phat*, which described a concept for a weight-loss reality television series was infringed by *The Biggest Loser*, a television series with a similar concept.  The court rejected plaintiff's claim to copyright in the combination of elements allegedly found in both works, finding the elements to be ideas and scènes-à-faire.  584 F.Supp.2d at 1295.  Both works included a competition in which contestants try to lose the most weight; rewards offered in connection with specific challenges; a grand prize awarded to the person with the greatest weight loss at the show's end; episodes involving exercise and fitness activities focusing on the struggles of contestants who are overweight and out of shape; scenes providing fitness, diet and healthy eating tips; coaching by exercise and dietary experts; weigh-ins, before and after photographs; and team challenges.  *Id*. at 1295-97.

***Bethea v. Burnett***.  In *Bethea*, the Honorable John F. Walter granted summary judgment for defendants on a claim that the Donald Trump series *The Apprentice* infringed plaintiff's copyright in a concept for a reality television show *C.E.O.* about contestants moving "up the corporate ladder."  2005 WL 1720631 at *8.  The court concluded that a reality show set in a corporate environment with: a group of dynamic participants from varied backgrounds; a board room setting;  a group of professionals who evaluate participants' performances; participants who live in the same quarters designed to maximize drama;  no use of scripted dialogue, use of incidental characters, and editing one week of action down to one episode, were all unoriginal staples of reality television, and not protectable.  *Id.*

***Rice v. Fox Broad. Co***.  In each of the above cases, District Courts looked to the Ninth Circuit's decision in *Rice*.  There, the court affirmed defendant's successful summary judgment motion where the plaintiff had claimed that a series of television

specials revealing the secrets behind famous magic tricks infringed his copyright in a similar home video, *The Mystery Magician*.  330 F.3d at 1174.  The court rejected plaintiff's contention that he could assert copyright in the combination of stock elements that were merely uncopyrightable ideas and scènes-à-faire: magicians wearing masks; opening monologues explaining that the secrets of magic tricks are closely guarded; secret locations with no audience; opening sequences with a magician walking dramatically into the light; magicians performing an illusion normally and then re-performing it with an explanation of how it is done; and moods of secrecy and mystery.  *Id*. at 1176-77.

Just like the reality show treatments in *Zella*, *Milano*, *Bethea*, Plaintiffs' Treatment comprises a general format for a potential series—a "no-hold barred, in-depth, insider look" at "the lives of four women married to some of the biggest names in hip hop"—but itself contains very limited expressive content.  What little is found in the Treatment directly flows from the concept—e.g. "ups and downs of fame and the personal struggles each of these women share," and "the truth behind the legal troubles, rumors and scandals," etc.  Like *Showbiz Chefs*, *From Fat to Phat* and *C.E.O.*, the *HHW* show Treatment is not amenable to copyright protection.

***Third***, the Treatment is comprised of *factual* descriptions of the four real women proposed to be featured.  *See* SUF 9; Rooney Decl. Ex. E, Deposition Transcript of Trisha Lum ("Lum Depo.") 72:11-22, 113:18-114:2.  Plaintiffs cannot claim copyright in these women's stories, dramatic as they may be: "all fact-scientific, historical, biographical, and news of the day … may not be copyrighted and are part of the public domain available to every person."  *Feist Publications*, 499 U.S. at 348.  Plaintiffs' description of the four cast members lives are almost entirely accurate, *supra* p. 5, and their choice of biographical information is hardly novel: the aspects of the women's personal lives summarized in the Treatment are those of documented public interest (affairs, romance, legal issues).  Tashera Simmons and Debbie Lorenzo were explicitly covered in prior shows such as *E! True Hollywood*

*Story: Hip Hop Wives* and *Rapper Wives*, and in *Gotti's Way*, respectively.  SUF 11, 14-15.  Likewise, Tifrere's acrimonious divorce from Swizz Beatz following his alleged affair with Alicia Keys received much publicity.  SUF 20.  Plaintiffs cannot stake claim to the biographical portions in the Treatment.

## 2.    Plaintiffs' Treatment Lacks Any Similar Protectable Elements to Defendants' Television Series

Plaintiffs' own expert, Stuart Kelban, testified that the "idea/concept/premise" of *HHW* is that "we will follow the behind the scenes up and down real life struggles of women who are – who are attached to male icons, hip hop icons and thus have to deal with both on a personal and professional level dealing with surviving in this world."  SUF 39; Rooney Decl. Ex. H, Deposition Transcript of Stuart Kelban ("Kelban Depo.") 213:6-14.  That being so, the Court might review the Treatment and ask, what is even left?  The "idea/concept/premise" described by Mr. Kelban, and scenes that flow inevitably therefrom, are the entire Treatment.[5]

In the usual copyright case involving a TV show, the extrinsic test "focuses on articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in two works."  *Benay*, 607 F.3d at 624.  Each of these elements is discussed below.  As will be seen, several of these elements are absent altogether in the Treatment—plot, dialogue, mood, pace, setting, sequence of events, SUF 40-41, 43, 45—and thus cannot support substantial similarity.  *See DuckHole Inc. v. NBC Universal Media LLC*, 2013 WL 5797279, at *8 (C.D. Cal. Sept. 6, 2013) (in dismissing for lack of substantial similarity, court found

---

[5] Kelban also admits that ***he did not do any filtering of unprotectable elements*** in his extrinsic analysis.  SUF 65; Kelban Depo. 109:11-13. 112:11-25.  As such, his comparison of the works, full of facts, ideas, stock and existing elements, cannot support a finding of substantial similarity.  *See* Cavalier, 297 F.3d at 822 (Courts "must take care to inquire only whether the protectible elements, standing alone, are substantially similar").  Kelban further admits that he did not consider any prior art in making his conclusions.  SUF 66; Kelban Depo. 128:14-129:4.

1  "insufficient information to compare pace and dialogue" between plaintiff's

2  treatment and defendant's work that was "fully developed into a television show with

3  distinctive pace and scripted dialogue").  And to the extent other elements may be

4  hazily discernable in the Treatment, they are hopelessly generic and unoriginal (as

5  Plaintiffs' expert conceded in many instances).  *See* Kelban Depo. 80:18-81:11, 82:8-

6  16, 139:12-22, 139:23-140:12.

a)      <b>Plot and Sequence of Events</b>

8     "Plot is defined as the sequence of events by which the author-expresses his

9  theme or idea." *Zella*, 529 F.Supp.2d at 1135.  "[T]his court 'compares, ***not the basic***

10 ***plot ideas*** for stories, but the actual concrete elements that make up the total

11 sequence of events and the relationships between the major characters.'")  *Funky*

12 *Films,* 462 F.3d at 1077 (quoting *Berkic*, 761 F.2d at 1293).

13    Plaintiffs' Treatment has no concrete elements that make up either a plot or

14 sequence of events.  In their discovery responses, Plaintiffs describe the plot as "[t]he

15 show follows the daily life of these women as both individuals and friends, and the

16 struggles that each of them face between each other, their current and former love

17 interests, their family, their extended friends and their careers in the music industry.

18 Struggles with love interests include battling divorce or separation, overcoming the

19 consequences of infidelity, attaining commitment, and finding true love… Struggles

20 with family… Struggles with careers…"  SUF 46; Rooney Decl. Ex. D, Rogs. 1, 15.

21    None of the foregoing constitutes a *plot*, but at best restates the show's

22 *premise* or *idea*.  What the Treatment lacks—and what is needed for protectable

23 expression in the form of a plot—are the actual, concrete, specific struggles the

24 women will face; how the women will address and overcome those struggles; and the

25 consequences of their actions.  Margolin Report ¶¶ 28-38.  Without any such

26 development, there is no plot.

27

28

1    Likewise, Plaintiffs describe their putative sequence of events as: "for some

2   characters the sequence of events deals with the dissolution or formation of marriage,

3   while other characters are driven by their careers in a quest for success in the music

4   industry and/or beyond, while other characters are simply trying to keep their family

5   together despite the legal troubles, infidelity and scandals that plague their hip hop

6   love interests."  SUF 47; Rooney Decl. Ex. D, Rogs 1, 16.  But this too patently

7   restates the premise, rather than providing an actual sequence of events by which a

8   character might "attain commitment," "find true love," "or overcome the

9   [unspecified] consequences of infidelity."  When pressed, Plaintiffs' expert admitted

10  there was no sequence of events. SUF 40; Kelban Depo. 249:2-250:16 ("Q. And

11  there's not a sequence of events per episode in the treatment. Right? A. No. There is

12  not.").  By contrast, a scene in the first episode of *L&HH* demonstrates the difference

13  between a premise of "attaining commitment" and a plot built upon a sequence of

14  events.  In that episode, Chrissy goes to a nightclub where her rapper boyfriend Jim

15  Jones is hosting a boxing match between bikini-clad women.  Chrissy is exasperated

16  by Jones's apparent inattention to her, but then becomes jealous and protective when

17  another woman looks at him, compelling her to consider their need for commitment.

18  SUF 38.  Sequences such as this play out across the first season, ultimately

19  culminating in a marriage proposal.  SUF 37; Margolin Report ¶ 97.

20    The Treatment also has no beginning, middle, or end, as plotting generally

21  dictates.  Plaintiffs' expert claims it "plants the seeds for the beginning and middle

22  perhaps," SUF 40; Kelban Depo. 249:16-250:16, but in the substantial similarity

23  analysis, Plaintiffs cannot lay claim to any plot which is *not* expressed just because it

24  might flow from their idea.  *See Berkic v. Crichton*, 761 F.2d at 1293

25  ("commonalities between the situations and incidents in the two works 'flow

26  naturally from [the] basic plot premise' of a television show about an animal

27  hospital.") (citation and quotation omitted).

28

### b)    Dialogue

Plaintiffs admit their Treatment contains no dialogue.  SUF 43.

### c)    Setting

Plaintiffs' Treatment does not describe any setting, either geographical (neighborhood, city) or physical (house, recording studio, vehicle, etc.).  SUF 41. Plaintiffs allege that their work nonetheless has an implicit geographical setting: New York City, "where the lives of these women take place on daily basis… "  Rooney Decl. Ex. D Rogs. 1, 17.  However, New York is not referenced in the Treatment. And to the extent that Plaintiffs claim that New York is implicit because their show is about the hip-hop industry largely centered in New York, this only confirms a New York setting is scènes-à-faire in the literal sense: the "scene of the action." Moreover, to the extent that Plaintiffs claim that a New York setting is also implied because it is the real life location of the cast members, it follows that this "choice" of setting is an historical fact, not a choice, and not creative expression.

### d)    Pace

Plaintiffs claim that both works are "high octane fast-paced drama."  SUF 48; Rooney Decl. Ex. D. Rog. 19.  This argument is a complete fallacy: first, because the Treatment is a one-page summary and not a narrative work like *L&HH*, it has no actual "pace," *i.e.* "a tempo; a rate of movement, and/or energy level."  Margolin Report ¶ 64.  Second, the Treatment does not even specify an intended pace for a series, if produced.  The Treatment says, "watch as the drama unfolds…" but pointedly does not say anything about "high octane" or "fast-paced" unfolding. Third, to the extent that Plaintiffs claims a fast pace is *implied* because of the subject matter, they concede its genericness.  Indeed, Defendants' *L&HH* is paced similarly to every *Real Housewives* show and every MTV and VH1 behind-the-music show. Margolin Report ¶¶ 65-66.  Plaintiffs' expert admitted that this pace is common in reality and scripted television.  SUF 49; Kelban Depo. 252:20-253:10.

### e)   Theme

Plaintiffs state that their theme is one of ***heaviness***:

> *Hip Hop Wives* is a docudrama about the heavy burden of being in or having been in relationships with hip hop artists, from their personal struggles in life, family, friendship, love and their own personal careers in the music industry outside of the shadow of the hip hop icons they date. *Hip Hop Wives* is not about the fabulous life of women who are in relationships with men in hip hop, but instead showcase the often tumultuous, gritty, conflict-oriented, dangerous, overly burdened and "unglamorous" life these women live….

SUF 50; Rooney Decl. Ex. D, Rogs. 1, 20.  The tagline, "Heavy must be the hand that wears the ring of a Hip Hop star," evokes Shakespeare's Henry IV, Part II (Act III, Scene 1, where King Henry, sleepless under the weight of responsibility, laments "[u]neasy lies the head that wears a crown."  Margolin Report ¶ 40.  This alleged theme is not only dissimilar from that of L&HH, but it is wholly unprotectable.

*L&HH* presents a far lighter pastiche of themes.  *L&HH* contains no singular theme as it tracks multiple stories involving its numerous characters on different thematic registers.  *Id.* ¶¶ 73, 143.  In the first season, for example, Chrissy's theme is ultimately romantic as she wins an engagement ring, while Emily's obverse journey to singlehood is a theme of empowerment.  *Id.*

By contrast, there is nothing about the proposed theme of *HHW* that is not generic and cliché.  *Id.* ¶¶ 74-75, 144.   Indeed, Plaintiff's expert's description of the theme of *HHW* is indistinguishable from his description of the entire show concept. *Compare* Rooney Declaration Ex. J, Expert Report of Stuart Kelban ("Kelban Report") ¶ 40; *with* SUF 39; Kelban Depo. 213:6-14.  Themes surrounding a premise of women involved with high-wattage men who must live the consequences of an extra-ordinary lifestyle, including competition from other women, are firmly established in the lexicon of reality television, including series about wives and husbands facing these tumultuous dynamics of the music business, and are unoriginal and unprotectable.  *See, e.g.*, *DMX: Soul Of A Man* (2006); *Gotti's Way* (2007).  SUF 55-56; Margolin Report ¶¶ 23-24, 74-75, 144.

#### f)   Mood

Plaintiffs argue that their mood is "continuous high energy, constant confrontation/conflict, extreme no holds barred drama, extreme joy and disappointment, chaos, envy, jealousy, love, soul searching, frustration, and humor." SUF 52; Rooney Decl. Ex. D, Rogs. 1, 18.[6]  Such a mood—a spectrum of moods along a rainbow of melodrama—is a generic derivation of the *HHW* treatment and is unprotectable.  *See*, *e.g.*, *Rice*, 330 F.3d at 1177 (overall mood of mystery arose from the basic plot idea of a show about revealing magic tricks, therefore unprotectable); *Olson*, 855 F.2d at 1451 (a comic mood is standard to the action-adventure television genre).  This same description of Mood could also be used to describe the mood of many works of prior art, including *The Real Housewives* franchise (2006), *Basketball Wives* (2009), or *Keeping Up With The Kardashians* (2007).  Margolin Report ¶ 61.  There is no original, protectable Mood to *HHW* that is substantially similar to *L&HH*.

#### g)   Characters

The Treatment states that *HHW* would "delve deep into the lives of four women," whom it identifies by name: Tashera [Simmons]; Debbie [Lorenzo]; Mashonda [Tifrere] and Chrissy [Lampkin].  *Supra* p. 4.

These women are not fictional characters.  Margolin Report ¶¶ 44-48.  They are actual women with actual life predicaments.  *See supra* p. 5.  As such, Plaintiffs cannot claim any copyright protection in these characters or in the short biographies in the Treatment.  A character based on a real person, including traits grounded in historic fact such as her name, appearance, and documented activities is not subject

---

[6] Plaintiffs' expert conceded the *HHW* mood merges with the show concept.  SUF 53; Kelban Depo. 254:4-10 ("Q: So really what you're saying is the mood is of -- flows from the premise that -- the concept that you described earlier which is the focus on, you know, the struggles and trials and tribulations of women in the hip hop industry who have relationships with these men?  A: Yes.  I would say that.")

to copyright protection. *See Chase-Riboud v. DreamWorks, Inc*., 987 F.Supp.1222 (C.D. Cal. 1997) (analyzing infringement claim relating to historical character appearing in the film *Amistad*). Plaintiffs did not create and do not own Tashera, Debbie, Mashonda, and Chrissy, nor any facts about or attributes of those "characters" in the Treatment.

Implicitly conceding that they do not "own" the women's stories, Plaintiffs suggest that it is the selection of these four women as "characters that gives rise to a protectable interest." Kelban Report ¶¶ 56-69, 72-75. This theory has several fatal defects:

*First*, only two of the same women appear in *L&HH* and only one, Chrissy Lampkin, has a major role. Moreover, Lampkin was *already* in talks to portray herself in a VH1 show before the Treatment was created. SUF 22. Mashonda Tifrere appears for just a few minutes total over the course of three episodes, and her role is mainly to advise Emily Bustamante with wisdom born of Tifrere's own public infidelity ordeal, which is not a subject of *L&HH*. SUF 19; Margolin Report ¶¶ 82, 100. Tifrere has no story arc of her own. *Id.* Conversely, *L&HH* features over a dozen principal cast members not found in the Treatment, including Bustamante, Olivia Longott, Somaya Reece, Yandy Smith Harris, and Kimberly Vanderhee in the first two seasons, and many more later. SUF 26, 34. Dozens of other people have sizable roles in Defendants' show that are not named in the Treatment. SUF 34. Plaintiffs' identification of one-and-a-half common real life "characters" does not support a finding of substantial similarity. *Shame on You Prods*, 2015 WL 4885221 at *26 ("In determining whether characters are similar, a court looks at the totality of [the characters'] attributes and traits as well as the extent to which the defendants' characters capture the total concept and feel of figures in [the plaintiff's work]").

*Second*, to the extent that Plaintiffs attempt to bypass the lack of common characters by reducing Tashera, Debbie, and Mashonda into their generic traits—there is still no substantially similarity. By Plaintiffs' own admission, there is no

1  correspondence between women on the two shows.  Rooney Decl. Ex. D, Rogs. 1,

2  11; Kelban Report ¶¶ 59-69.  Instead, Plaintiffs mix-and-match stock character traits

3  that appear in both works and divide them among different characters.  For example,

4  Mr. Kelban claims that Defendants' Emily copies Plaintiffs' Debbie because both

5  confront rumors that their men are cheating.  Kelban Report ¶ 68.  Yet Kelban also

6  claims that Emily is the copy of Chrissy because both are aspiring celebrity stylists.

7  Kelban Report ¶ 67.  Meanwhile, Plaintiffs' discovery responses state that Emily

8  copies Tashera, because both women strive to keep their family together.  Rooney

9  Decl. Ex. D, Rogs. 1, 11.  Yet Michael McQuarn testified that it is Yandy (Season

10  Two of *L&HH*) who copies Tashera, because both women are with men who go to

11  prison.  McQuarn Depo. 86:9-87:8.  And so it goes.  Spreading a handful of generic

12  character facets among different women (ignoring the countless dissimilar traits)

13  does not establish an inference that one character is copied from another character.

14  *See Rose v. Connelly*, 38 F. Supp. 54, 56 (S.D.N.Y. 1941) (No infringement where

15  Plaintiff "tries to show that the personal characteristics of plaintiff's character are

16  split among more than one of defendants' characters. With this method of resolving

17  troublesome differences, hardly any drama since the Garden of Eden could survive

18  the charge of plagiarism.")

19      *Third*, the allegedly similar character facets cited by Plaintiffs—a woman who

20  has a cheating partner, a woman who will do anything to keep the family together, a

21  woman whose husband faces incarceration, a woman who aspires to a job as a hip

22  hop celebrity stylist—these are all merely character tropes that appear in  "Real

23  Wives" and "Behind the Music," as well as numerous other reality shows.  SUF 55-

24  56; Margolin Report ¶¶ 19-26.  *See Cavalier*, 297 F.3d at 824 (characters which

25  naturally flow from a "basic plot idea" are "scènes-à-faire"); *accord Williams v.*

26  *Crichton*, 84 F.3d 581, 589 (2d Cir. 1996) ("electrified fences, automated tours,

27  dinosaur nurseries, and uniformed workers" are "classic scènes-à-faire that flow[ed]

28  from the uncopyrightable concept of a dinosaur zoo").

In light of Plaintiffs' mix-and-match approach, the scattershot list of just a handful of similar character facets across multiple seasons of show featuring many characters cannot support a finding of substantial similarity.  The Ninth Circuit is "particularly cautious [in finding substantial similarity] where [a] list [of perceived similarities] emphasizes random similarities scattered throughout the works." *Shame on You Prods.*,  2015 WL 4885221 at *16-32 (granting motion to dismiss notwithstanding a large number of perceived similarities in premise, plot, and characters, many of which "flow directly from the basic premise of a walk of shame").  Repeatedly, courts have held that such abstraction improperly "obfuscates the radical differences in the two works' expression." *Wild v. NBC Universal, Inc.*, 788 F.Supp.2d 1083, 1103 (C.D. Cal. 2011).

*HHW* and *L&HH* are both quintessentially genre television.  By design, they offer characters and other elements that are familiar, factual and formulaic.  Reality television formats are not amenable to copyright infringement claims in general, and all the more so here, where Plaintiffs' one-page Treatment is nothing more than the producer's statement of concept.  Plaintiffs' central allegation, that Defendants used their idea without using their production team, is not actionable in copyright.

## IV.   **CONCLUSION**

For the reasons set forth above, Defendants respectfully ask the Court to grant them summary judgment against Plaintiffs' claim for copyright infringement. Defendants will file a motion to recover their attorneys' fees and costs pursuant to the Copyright Act, 17 U.S.C. § 505.

DATED:  June 24, 2016

Respectfully submitted,
KENDALL BRILL & KELLY LLP

By:      /s/ Philip M. Kelly
Philip M. Kelly
Attorneys for Defendants